MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
ABEL DE JESUS AGUIRRE, ADRIAN
OLGUIN MARTINEZ, ARMANDO
HERNANDEZ, CARLOS HUMBERTO
REYES HERRERA, HORWIN VENTURA
CANDIA, JAVIER DE JESUS ARMENTA,
JOSE ANTONIO ROMERO ROMERO
(A.K.A. ANTONIO ROMERO), JOSUE
MENDEZ OLGUIN, VALENTE ASCENCIO,
YONIER ALBERTO GIRALDO OROZCO,
ROMAN OLGUIN, ABELARDO PEREZ
TORRALBA, WILLIAM PALADINES, JUAN
PALACIOS, MIGUEL ANGEL GALICIA
JIMENEZ, CARLOS VIDALS RAMOS,
MISAEL LEON SANCHEZ, ARMANDO
RAFAEL MESINAS, HERNAN LOPEZ
CARRANZA, MARCOS ALCANTARA
HERNANDEZ, JESUS ANGEL BASURTO,
JAVIER FLORES SEGUNDO, JOSE
GUSTAVO PERALTA AVENDANO, and
OSBAN YOVANY LONDONO
CASTRILLON, *individually and on behalf of
others similarly situated,*

                          *Plaintiffs,*

          -against-

MAXDELIVERY 2, LLC (D/B/A MAX
DELIVERY), CHRISTOPHER SIRAGUSA,
and PAUL ABRAMSKY,

                        *Defendants.*

-------------------------------------------------------X

**COMPLAINT**

**COLLECTIVE ACTION UNDER
29 U.S.C. § 216(b) AND RULE 23
CLASS ACTION**

**ECF Case**

       Plaintiffs Abel De Jesus Aguirre, Adrian Olguin Martinez, Armando Hernandez, Carlos

Humberto Reyes Herrera, Horwin Ventura Candia, Javier De Jesus Armenta, Jose Antonio

Romero Romero (a.k.a. Antonio Romero), Josue Mendez Olguin, Valente Ascencio, Yonier Alberto Giraldo Orozco, Roman Olguin, Abelardo Perez Torralba, William Paladines, Juan Palacios, Miguel Angel Galicia Jimenez, Carlos Vidals Ramos, Misael Leon Sanchez, Armando Rafael Mesinas, Hernan Lopez Carranza, Marcos Alcantara Hernandez, Jesus Angel Basurto, Javier Flores Segundo, Jose Gustavo Peralta Avendano, and Osban Yovany Londono Castrillon , individually and on behalf of others similarly situated (collectively, "Plaintiffs"), by and through their attorneys, Michael Faillace & Associates, P.C., upon their knowledge and belief, and as against Maxdelivery 2, LLC (d/b/a Max Delivery), ("Defendant Corporation"), Christopher Siragusa and  Paul Abramsky, ("Individual Defendants"), (collectively, "Defendants"), allege as follows:

## NATURE OF ACTION

1.      Plaintiffs are both current and former employees of Defendants Maxdelivery 2, LLC (d/b/a Max Delivery), Christopher Siragusa, and Paul Abramsky.

2.       Defendants own, operate, or control a delivery company, located at 318 West 39th Street, New York, New York 10018 under the name "Max Delivery".

3.      Upon information and belief, individual Defendants Christopher Siragusa and Paul Abramsky, serve or served as owners, managers, principals, or agents of Defendant Corporation and, through this corporate entity, operate or operated the delivery company as a joint or unified enterprise.

4.      Plaintiffs have been employed as delivery workers at the delivery company located at 318 West 39th Street, New York, New York 10018.

5.      Plaintiffs have ostensibly been employed as delivery workers. However, they have been required to spend a considerable part of their work day performing non-tipped duties, including but not limited to cleaning the bathroom, taking out the garbage, mopping and sweeping

the entire floor, throwing out over due food, preparing bags for deliveries, handing flyers in the streets, cleaning the windows, taking out the trash and stocking inventories (hereafter the "non-tipped duties").

6.    At all times relevant to this Complaint, Plaintiffs have worked for Defendants in excess of 40 hours per week, without appropriate minimum wage, overtime, and spread of hours compensation for the hours that they have worked.

7.    Further, Defendants have failed to pay Plaintiffs the required "spread of hours" pay for any day in which they have had to work over 10 hours a day.

8.    Defendants have employed and accounted for Plaintiffs as delivery workers in their payroll, but in actuality their duties have required a significant amount of time spent performing the non-tipped duties alleged above.

9.    Regardless, at all relevant times, Defendants have paid Plaintiffs either at the lowered tip-credited rate or at a rate that is below the minimum wage.

10.    However, under both the FLSA and NYLL, Defendants are not entitled to take a tip credit because Plaintiffs' non-tipped duties have exceeded 20% of each workday, or 2 hours per day, whichever is less in each day.  12 N.Y. C.R.R. §146.

11.    Upon information and belief, Defendants have employed the policy and practice of disguising Plaintiffs' actual duties in payroll records by designating them as delivery workers instead of non-tipped employees. This has allowed Defendants to avoid paying Plaintiffs at the minimum wage rate and has enabled them to pay them either at the lowered tip-credited rate or at a rate that is below the minimum wage rate.

12.    In addition, Defendants have maintained a policy and practice of unlawfully appropriating Plaintiffs' and other tipped employees' tips and have made unlawful deductions from these Plaintiffs' and other tipped employees' wages.

13.    Defendants' conduct has extended beyond Plaintiffs to all other similarly situated employees.

14.    At all times relevant to this Complaint, Defendants have maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

15.    Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq*. ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq*. and 650 *et seq*. (the "NYLL"), and the "spread of hours" and overtime wage orders of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. tit. 12, § 146-1.6 (herein the "Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees and costs.

16.    Plaintiffs now bring this action as a class action under Rule 23 and seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

17.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

18.     Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, Defendants maintain their corporate headquarters and offices within this district, and Defendants

operate a delivery company located in this district. Further, Plaintiffs have been employed by Defendants in this district.

## PARTIES

### *Plaintiffs*

19.    Plaintiff Abel De Jesus Aguirre ("Plaintiff De Jesus" or "Mr. De Jesus") is an adult individual residing in Bronx County, New York. Plaintiff De Jesus was employed by Defendants at "Max Delivery" from approximately 2006 until on or about December 2015.

20.    Plaintiff Adrian Olguin Martinez ("Plaintiff Olguin" or "Mr. Olguin") is an adult individual residing in Queens County, New York. Plaintiff Olguin has been employed by Defendants at "Max Delivery" from approximately November 2015 until the Present Date.

21.    Plaintiff Armando Hernandez ("Plaintiff Hernandez" or "Mr. Hernandez") is an adult individual residing in Kings County, New York. Plaintiff Hernandez was employed by Defendants at Max Delivery from approximately December 2007 until on or about June 2016.

22.    Plaintiff Carlos Humberto Reyes Herrera ("Plaintiff Reyes" or "Mr. Reyes") is an adult individual residing in Queens County, New York. Plaintiff Reyes was employed by Defendants at "Max Delivery" from approximately September 2017 until on or about March 2018.

23.    Plaintiff Horwin Ventura Candia ("Plaintiff Ventura" or "Mr. Ventura") is an adult individual residing in Bronx County, New York. Plaintiff Ventura has been employed by Defendants at "Max Delivery" from approximately January 12, 2015 until the present date.

24.    Plaintiff Javier De Jesus Armenta ("Plaintiff Armenta" or "Mr. Armenta") is an adult individual residing in Bronx County, New York. Plaintiff Armenta has been employed by Defendants at "Max Delivery" from approximately February 2018 until the present date.

25.    Plaintiff Jose Antonio Romero Romero (a.k.a. Antonio Romero) ("Plaintiff Romero" or "Mr. Romero") is an adult individual residing in Bronx County, New York. Plaintiff Romero

was employed by Defendants at "Max Delivery" from approximately October 2016 until on or about March 2018.

26.    Plaintiff Josue Mendez Olguin ("Plaintiff Mendez" or "Mr. Mendez") is an adult individual residing in Queens County, New York. Plaintiff Mendez has been employed by Defendants at "Max Delivery" from approximately August 2017 until the present date.

27.    Plaintiff Valente Ascencio ("Plaintiff Ascencio" or "Mr. Ascencio") is an adult individual residing in Queens County, New York. Plaintiff Ascencio was employed by Defendants at "Max Delivery" from approximately 2008 until on or about August 8, 2018.

28.    Plaintiff Yonier Alberto Giraldo Orozco ("Plaintiff Giraldo" or "Mr. Giraldo") is an adult individual residing in New York County, New York. Plaintiff Giraldo has been employed by Defendants at "Max Delivery" from approximately March 16, 2016 until the present date.

29.    Plaintiff Roman Olguin ("Plaintiff Roman" or "Mr. Roman") is an adult individual residing in Queens County, New York. Plaintiff Roman was employed by Defendants at "Max Delivery" from approximately September 15, 2017 until on or about July 18, 2018.

30.    Plaintiff Abelardo Perez Torralba ("Plaintiff Perez" or "Mr. Perez") is an adult individual residing in Kings County, New York. Plaintiff Perez was employed by Defendants at "Max Delivery" from approximately 2010 until on or about August 2015.

31.    Plaintiff William Paladines ("Plaintiff Paladines" or "Mr. Paladines") is an adult individual residing in Queens County, New York. Plaintiff Paladines was employed by Defendants at "Max Delivery" from approximately June 2013 until on or about March 2016.

32.    Plaintiff Juan Palacios ("Plaintiff Palacios" or "Mr. Palacios") is an adult individual residing in Bronx County, New York. Plaintiff Palacios was employed by Defendants at "Max Delivery" from approximately September 2012 until on or about July 2015.

33.    Plaintiff Miguel Angel Galicia Jimenez ("Plaintiff Galicia" or "Mr. Galicia") is an adult individual residing in Kings County, New York. Plaintiff Galicia was employed by Defendants at Max Delivery from approximately March 2010 until on or about December 2015.

34.    Plaintiff Carlos Vidals Ramos ("Plaintiff Vidals" or "Mr. Vidals") is an adult individual residing in Kings County, New York. Plaintiff Vidals was employed by Defendants at "Max Delivery" from approximately 2010 until on or about January 6, 2018.

35.    Plaintiff Misael Leon Sanchez ("Plaintiff Leon" or "Mr. Leon") is an adult individual residing in Kings County, New York. Plaintiff Leon has been employed by Defendants at "Max Delivery" from approximately June 2014 until the present date.

36.    Plaintiff Armando Rafael Mesinas ("Plaintiff Mesinas" or "Mr. Mesinas") is an adult individual residing in Queens County, New York. Plaintiff Mesinas was employed by Defendants at "Max Delivery" from approximately November 2009 until on or about September 2015.

37.    Plaintiff Hernan Lopez Carranza ("Plaintiff Lopez" or "Mr. Lopez") is an adult individual residing in Queens County, New York. Plaintiff Lopez was employed by Defendants at "Max Delivery" from approximately September 2012 until on or about December 2016.

38.    Plaintiff Marcos Alcantara Hernandez ("Plaintiff Alcantara" or "Mr. Alcantara") is an adult individual residing in Bronx County, New York. Plaintiff Alcantara was employed by Defendants at "Max Delivery" from approximately August 2014 until on or about April 2016.

39.    Plaintiff Jesus Angel Basurto ("Plaintiff Basurto" or "Mr. Basurto") is an adult individual residing in New York County, New York. Plaintiff Basurto was employed by Defendants at "Max Delivery" from approximately November 2011 until on or about May 2017.

40.    Plaintiff Javier Flores Segundo ("Plaintiff Flores" or "Mr. Flores") is an adult individual residing in New York County, New York. Plaintiff Flores was employed by Defendants at "Max Delivery" from approximately March 2012 until on or about November 2015.

41.    Plaintiff Jose Gustavo Peralta Avendano ("Plaintiff Peralta" or "Mr. Peralta") is an adult individual residing in Queens County, New York. Plaintiff Peralta was employed by Defendants at "Max Delivery" from approximately 2006 until on or about June 2014.

42.    Plaintiff Osban Yovany Londono Castrillon ("Plaintiff Londono" or "Mr. Londono") is an adult individual residing in Queens County, New York. Plaintiff Londono has been employed by Defendants at "Max Delivery" from approximately September 2015 until the present date.

*Defendants*

43.    At all relevant times, Defendants own, operate, or control a delivery company, located at 318 West 39th Street, New York, New York 10018 under the name "Max Delivery".

44.    Upon information and belief, Maxdelivery 2, LLC (d/b/a Max Delivery) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 318 West 39th Street, New York, New York 10018 and previously located at 51 White Street, New York, New York 10013.

45.    Defendant Christopher Siragusa is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Christopher Siragusa is sued individually in his capacity as owner, officer and/or agent of Defendant Corporation. Defendant Christopher Siragusa possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

46.    Defendant Paul Abramsky is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Paul Abramsky is sued individually in his capacity as a manager of Defendant Corporation. Defendant Paul Abramsky

possesses operational control over Defendant Corporation and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

*Defendants Constitute Joint Employers*

47.    Defendants operate a delivery company located in the Midtown West section of Manhattan in New York City.

48.    Individual Defendants, Christopher Siragusa and Paul Abramsky, possess operational control over Defendant Corporation, possess ownership interests in Defendant Corporation, or control significant functions of Defendant Corporation.

49.    Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

50.    Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

51.    Defendants jointly employed Plaintiffs (and all similarly situated employees) and are Plaintiffs' (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq*. and the NYLL.

52.    In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

53.    Upon information and belief, Individual Defendants Christopher Siragusa operates Defendant Corporation as either an alter ego of himself and/or failed to operate Defendant Corporation as an entity legally separate and apart from himself, by among other things:

a)  failing to adhere to the corporate formalities necessary to operate Defendant Corporation as a Corporation,

b)  defectively forming or maintaining the corporate entity of Defendant Corporation, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

c)  transferring assets and debts freely as between all Defendants,

d)  operating Defendant Corporation for his own benefit as the sole or majority shareholder,

e)  operating Defendant Corporation for his own benefit and maintaining control over this corporation as a closed Corporation,

f)  intermingling assets and debts of his own with Defendant Corporation,

g)  diminishing and/or transferring assets of Defendant Corporation to avoid full liability as necessary to protect his own interests, and

h)  Other actions evincing a failure to adhere to the corporate form.

54.    At all relevant times, Defendants have been Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants have had the power to hire and fire Plaintiffs, have controlled the terms and conditions of employment, and have determined the rate and method of any compensation in exchange for Plaintiffs' services.

55.    In each year from 2012 to 2018, Defendants have, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

56.    In addition, upon information and belief, Defendants and/or their enterprise have been directly engaged in interstate commerce. As an example, numerous items that are used in the delivery company on a daily basis are goods produced outside of the State of New York.

## *Individual Plaintiffs*

57.    Plaintiffs are both current and former employees of Defendants who ostensibly have been employed as delivery workers. However, they have spent over 20% of each shift performing the non-tipped duties described above.

58.    Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

## *Plaintiff Abel De Jesus Aguirre*

59.    Plaintiff De Jesus was employed by Defendants from approximately 2006 until on or about December 2015.

60.    Defendants employed Plaintiff De Jesus as a delivery worker.

61.    However, Plaintiff De Jesus was also required to spend a significant portion of his work day performing the non-tipped duties described above.

62.    Although Plaintiff De Jesus was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

63.    Plaintiff De Jesus regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

64.    Plaintiff De Jesus's work duties required neither discretion nor independent judgment.

65.    From approximately September 2012 until on or about December 2015, Plaintiff De Jesus worked from approximately 11:00 a.m. until on or about 11:00 p.m., 6 days a week (typically 72 hours per week).

66.    Throughout his employment, Defendants paid Plaintiff De Jesus his wages by direct deposit.

67.    From approximately September 2012 until on or about December 2015, Defendants paid Plaintiff De Jesus $11.50 per hour for his regular hours and time and a half for the overtime hours.

68.    Defendants never granted Plaintiff De Jesus any breaks or meal periods of any kind.

69.    Plaintiff De Jesus was never notified by Defendants that his tips were being included as an offset for wages.

70.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff De Jesus's wages.

71.    Defendants withheld a portion of Plaintiff De Jesus's tips; specifically, Defendants withheld 5 to 10% of his daily tips in order to pay the packers who had no contact with the customers.

72.    Defendants took improper and illegal deductions from Plaintiff De Jesus's wages; specifically, Defendants deducted a total of $500 of Plaintiff De Jesus's pay as a charge for two company delivery bags.

73.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff De Jesus regarding overtime and wages under the FLSA and NYLL.

74.    Defendants did not give any notice to Plaintiff De Jesus, in English and in Spanish (Plaintiff De Jesus's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

75.    Defendants required Plaintiff De Jesus to purchase "tools of the trade" with his own funds—including four bicycles, monthly bicycle maintenance, a helmet, a chain, a lock, two bicycle's baskets and two company delivery bags.

*Plaintiff Adrian Olguin Martinez*

76.    Plaintiff Olguin has been employed by Defendants from approximately November 2015 until the present date.

77.    Defendants have ostensibly employed Plaintiff Olguin as a delivery worker.

78.    However, Plaintiff Olguin has also been required to spend a significant portion of his work day performing the non-tipped duties described above.

79.    Although Plaintiff Olguin has ostensibly been employed as a delivery worker, he has spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

80.    Plaintiff Olguin has regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

81.    Plaintiff Olguin's work duties have required neither discretion nor independent judgment.

82.    From approximately November 2015 until on or about February 2016, Plaintiff Olguin worked from approximately 3:00 p.m. until on or about 11:00 p.m., 6 days a week (typically 48 hours per week).

83.    From approximately March 2016 until on or about August 2016, Plaintiff Olguin worked from approximately 3:00 p.m. until on or about 10:00 p.m., 5 days a week (typically 35 hours per week).

84.    From approximately August 2016 until on or about September 2016, Plaintiff Olguin worked from approximately 7:00 a.m. until on or about 4:00 p.m., 5 days a week (typically 45 hours per week).

85.    From approximately October 2016 until on or about February 2017, Plaintiff Olguin worked from approximately 7:00 a.m. until on or about 4:00 p.m., 6 days a week (typically 54 hours per week).

86.    From approximately March 2017 until on or about September 2017, Plaintiff Olguin worked from approximately 7:00 a.m. until on or about 4:00 p.m., 5 days a week (typically 45 hours per week).

87.    From approximately October 2017 until on or about February 2018, Plaintiff Olguin worked from approximately 7:00 a.m.  Until on or about 4:00 p.m., 6 days a week (typically 54 hours per week).

88.    From approximately March 2018 until the present date, Plaintiff Olguin has worked from approximately 7:00 a.m. until on or about 4:00 p.m., 5 days a week (typically 45 hours per week).

89.    Throughout his employment, Defendants have paid Plaintiff Olguin his wages by check.

90.    From approximately November 2015 until on or about February 2016, Defendants paid Plaintiff Olguin $9.00 per hour for his regular hours and time and a half for the overtime hours.

91.    From approximately March 2016 until on or about August 2016, Defendants paid Plaintiff Olguin $9.00 per hour.

92.    From approximately August 2016 until on or about December 2017, Defendants paid Plaintiff Olguin $11.00 per hour for his regular hours and time and a half for the overtime hours.

93.    From approximately January 2018 until the present date, Defendants have paid Plaintiff Olguin $11.50 per hour for his regular hours and time and a half for the overtime hours.

94.    Defendants have never granted Plaintiff Olguin any breaks or meal periods of any kind.

95.    Plaintiff Olguin has never been notified by Defendants that his tips are being included as an offset for wages.

96.    Defendants have not accounted for these tips in any daily or weekly accounting of Plaintiff Olguin's wages.

97.    Defendants have withheld a portion of Plaintiff Olguin's tips; specifically, Defendants have withheld 5% of his daily tips in order to pay the packers who had no contact with the customers.

98.    Defendants have taken improper and illegal deductions from Plaintiff Olguin's wages; specifically, Defendants have deducted a total of $250 of Plaintiff Olguin's pay as a charge for the company delivery bag.

99.    In addition, from approximately July 2018 until the present date Defendants have charged Plaintiff Olguin a daily fee of $5.00 in cash for the bicycle's /battery rental.

100.    No notification, either in the form of posted notices or other means, has ever been given to Plaintiff Olguin regarding overtime and wages under the FLSA and NYLL.

101.    Defendants have never given any notice to Plaintiff Olguin, in English and in Spanish (Plaintiff Olguin's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

102.    Defendants have required Plaintiff Olguin to purchase "tools of the trade" with his own funds—including three helmets and the company delivery bag.

*Plaintiff Armando Hernandez*

103.    Plaintiff Hernandez was employed by Defendants from approximately December 2007 until on or about June 2016.

104.  Defendants ostensibly employed Plaintiff Hernandez as a delivery worker.

105.  However, Plaintiff Hernandez was also required to spend a significant portion of his work day performing the non-tipped duties described above.

106.  Although Plaintiff Hernandez ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

107.  Plaintiff Hernandez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

108.  Plaintiff Hernandez's work duties required neither discretion nor independent judgment.

109.  From approximately September 2012 until on or about June 2016, Plaintiff Hernandez worked from approximately 9:00 a.m. until on or about 3:00 p.m., 5 days a week (typically 30 hours per week).

110.  Throughout his employment, Defendants paid Plaintiff Hernandez his wages by check.

111.  From approximately September 2012 until on or about July 2014, Defendants paid Plaintiff Hernandez $10.50 per hour.

112.  From approximately July 2014 until on or about December 2014, Defendants paid Plaintiff Hernandez $11.20 per hour.

113.  From approximately January 2015 until on or about June 2016, Defendants paid Plaintiff Hernandez $11.75 per hour.

114.  Defendants never granted Plaintiff Hernandez any breaks or meal periods of any kind.

115.  Plaintiff Hernandez was never notified by Defendants that his tips were being included as an offset for wages.

116. Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Hernandez's wages.

117. Defendants withheld a portion of Plaintiff Hernandez's tips; specifically, Defendants withheld 5% of his daily tips in order to pay the packers who had no contact with the customers.

118. Defendants took improper and illegal deductions from Plaintiff Hernandez's wages; specifically, Defendants deducted a portion of Plaintiff Hernandez's pay every time he was unable to deliver an order to a customer for reasons totally out of his control.

119. Defendants did not give any notice to Plaintiff Hernandez, in English and in Spanish (Plaintiff Hernandez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

120. Defendants required Plaintiff Hernandez to purchase "tools of the trade" with his own funds—including a bicycle, one basket, a helmet, one pair of lights, one lock, one rain jacket, special pants for rain, rain boots and the company delivery bag.

*Plaintiff Carlos Humberto Reyes Herrera*

121. Plaintiff Reyes was employed by Defendants from approximately September 2017 until on or about March 2018.

122. Defendants ostensibly employed Plaintiff Reyes as a delivery worker.

123. However, Plaintiff Reyes was also required to spend a significant portion of his work day performing the non-tipped duties described above.

124. Although Plaintiff Reyes ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

125. Plaintiff Reyes regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

126. Plaintiff Reyes's work duties required neither discretion nor independent judgment.

127.  From approximately September 2017 until on or about December 2017, Plaintiff Reyes worked from approximately 2:00 p.m. until on or about 11:00 p.m., 5 days a week (typically 45 hours per week).

128.  From approximately January 2018 until on or about March 2018, Plaintiff Reyes worked from approximately 9:00 a.m. until on or about 9:00 p.m., 6 days a week (typically 72 hours per week).

129.  Throughout his employment, Defendants paid Plaintiff Reyes his wages by check.

130.  From approximately September 2017 until on or about December 2017, Defendants paid Plaintiff Reyes $9.00 per hour for his regular hours and time and a half for the overtime hours.

131.  From approximately January 2018 until on or about March 2018, Defendants paid Plaintiff Reyes $11.00 per hour for his regular hours and time and a half for the overtime hours.

132.  Defendants never granted Plaintiff Reyes any breaks or meal periods of any kind.

133.  Plaintiff Reyes was never notified by Defendants that his tips were being included as an offset for wages.

134.  Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Reyes's wages.

135.  Defendants withheld a portion of Plaintiff Reyes's tips; specifically, Defendants withheld 5% of his daily tips in order to pay the packers who had no contact with the customers.

136.  Defendants took improper and illegal deductions from Plaintiff Reyes's wages; specifically, Defendants deducted a total of $250 from Plaintiff Reyes's pay as a charge for the company delivery bag.

137.  No notification, either in the form of posted notices or other means, was ever given to Plaintiff Reyes regarding overtime and wages under the FLSA and NYLL.

- 18 -

138.    Defendants did not give any notice to Plaintiff Reyes, in English and in Spanish (Plaintiff Reyes's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

139.    Defendants required Plaintiff Reyes to purchase "tools of the trade" with his own funds—including a lock, a helmet and the company delivery bag.

*Plaintiff Horwin Ventura Candia*

140.  Plaintiff Ventura has been employed by Defendants from approximately January 12, 2015 until the present date.

141.  Defendants have ostensibly employed Plaintiff Ventura as a delivery worker.

142.  However, Plaintiff Ventura has also been required to spend a significant portion of his work day performing the non-tipped duties described above.

143.  Although Plaintiff Ventura has ostensibly been employed as a delivery worker, he has spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

144.  Plaintiff Ventura has regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

145.  Plaintiff Ventura's work duties have required neither discretion nor independent judgment.

146.  From approximately January 12, 2015 until on or about December 2015, Plaintiff Ventura worked from approximately 3:00 p.m. until on or about 11:00 p.m., 5 days a week (typically 40 hours per week).

147.  From approximately January 2016 until the present date, Plaintiff Ventura has worked from approximately 4:00 p.m. until on or about 1:00 a.m., 3 days a week and from approximately 8:00 a.m. until on or about 4:00 p.m., 2 days a week (typically 43 hours per week).

148.  Throughout his employment, Defendants have paid Plaintiff Ventura his wages by check.

149.  From approximately January 12, 2015 until on or about December 2015, Defendants paid Plaintiff Ventura $8.50 per hour.

150.  From approximately January 2016 until on or about December 2017, Defendants paid Plaintiff Ventura $9.50 per hour for his regular hours and time and a half for the overtime hours.

151.  From approximately January 2018 until the present date, Defendants have paid Plaintiff Ventura $11.50 per hour for his regular hours and time and a half for the overtime hours.

152.  Defendants have never granted Plaintiff Ventura any breaks or meal periods of any kind.

153.  Plaintiff Ventura has never been notified by Defendants that his tips are being included as an offset for wages.

154.  Defendants have not accounted for these tips in any daily or weekly accounting of Plaintiff Ventura's wages.

155.  Defendants have withheld a portion of Plaintiff Ventura's tips; specifically, Defendants have withheld 5% of his daily tips in order to pay the packers who had no contact with the customers.

156.  Defendants have taken improper and illegal deductions from Plaintiff Ventura's wages; specifically, Defendants have deducted a total of $250 of Plaintiff Ventura's pay as a charge for the company delivery bag.

157.   In addition, from approximately July 2018 until the present date, Defendants have charged Plaintiff Ventura a daily fee of $5.00 in cash for the bicycle's/battery's rental.

158.  No notification, either in the form of posted notices or other means, has ever been given to Plaintiff Ventura regarding overtime and wages under the FLSA and NYLL.

159.    Defendants have never given any notice to Plaintiff Ventura, in English and in Spanish (Plaintiff Ventura's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

160.    Defendants have required Plaintiff Ventura to purchase "tools of the trade" with his own funds—including a helmet, a chain and the company delivery bag.

*Plaintiff Javier De Jesus Armenta*

161.    Plaintiff Armenta has been employed by Defendants from approximately February 2018 until the present date.

162.    Defendants have ostensibly employed Plaintiff Armenta as a delivery worker.

163.    However, Plaintiff Armenta has also been required to spend a significant portion of his work day performing the non-tipped duties described above.

164.    Although Plaintiff Armenta has ostensibly been employed as a delivery worker, he has spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

165.    Plaintiff Armenta has regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

166.    Plaintiff Armenta's work duties have required neither discretion nor independent judgment.

167.    From approximately February 2018 until on or about April 2018, Plaintiff Armenta worked from approximately 4:00 p.m. until on or about 1:30 a.m. to 2:00 a.m., 5 days a week (typically 47.5 to 50 hours per week).

168.    From approximately April 2018 until the present date, Plaintiff Armenta has worked from approximately 4:00 p.m. until on or about 1:00 a.m., 4 days a week and from approximately 5:00 p.m. until on or about 11:30 p.m., 1 day a week (typically 42.5 hours per week).

169.  Throughout his employment, Defendants have paid Plaintiff Armenta his wages by check.

170.  From approximately February 2018 until the present date, Defendants have paid Plaintiff Armenta $11.05 per hour for his regular hours and time and a half for the overtime hours.

171.  Defendants have never granted Plaintiff Armenta any breaks or meal periods of any kind.

172.  Plaintiff Armenta has never been notified by Defendants that his tips are being included as an offset for wages.

173.  Defendants have not accounted for these tips in any daily or weekly accounting of Plaintiff Armenta's wages.

174.  Defendants have withheld a portion of Plaintiff Armenta's tips; specifically, Defendants withheld 5% of his daily tips in order to pay the packers who had no contact with the customers.

175.  Defendants have taken improper and illegal deductions from Plaintiff Armenta's wages; specifically, Defendants have deducted a total of $150 of Plaintiff Armenta's pay as a charge for the company delivery bag.

176.   In addition from approximately July 2018 until the present date, Defendants have charged Plaintiff Armenta a daily fee of $5.00 in cash for the bicycle's/battery's rental.

177.  No notification, either in the form of posted notices or other means, has ever been given to Plaintiff Armenta regarding overtime and wages under the FLSA and NYLL.

178.   Defendants have never given any notice to Plaintiff Armenta, in English and in Spanish (Plaintiff Armenta's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

179.    Defendants have required Plaintiff Armenta to purchase "tools of the trade" with his own funds—including a chain, a lock and a company delivery bag.

*Plaintiff Jose Antonio Romero Romero (a.k.a. Antonio Romero)*

180.    Plaintiff Romero was employed by Defendants from approximately October 2016 until on or about March 2018.

181.    Defendants ostensibly employed Plaintiff Romero as a delivery worker.

182.    However, Plaintiff Romero was also required to spend a significant portion of his work day performing the non-tipped duties described above.

183.    Although Plaintiff Romero ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

184.    Plaintiff Romero regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

185.    Plaintiff Romero's work duties required neither discretion nor independent judgment.

186.    From approximately October 2016 until on or about November 2016, Plaintiff Romero worked from approximately 4:00 p.m. until on or about 12:00 a.m., 3 days a week and from approximately 4:00 p.m. until on or about 1:00 a.m., 2 days a week (typically 42 hours per week).

187.    From approximately December 1, 2016 until on or about December 31, 2016, Plaintiff Romero worked from approximately 4:00 p.m. until on or about 12:00 a.m., 3 days a week, from approximately 4:00 p.m. until on or about 1:00 a.m., 2 days a week, and from approximately 3:00 p.m. until on or about 12:00 a.m., 2 days a week (typically 60 hours per week).

188.    From approximately January 1, 2017 until on or about March 2018, Plaintiff Romero worked from approximately 4:00 p.m. until on or about 12:00 a.m., 3 days a week and from approximately 4:00 p.m. until on or about 1:00 a.m., 2 days a week (typically 42 hours per week).

189.  Throughout his employment, Defendants paid Plaintiff Romero his wages by check.

190.  From approximately October 2016 until on or about December 2016, Defendants paid Plaintiff Romero $9.00 per hour for his regular hours and time and a half for the overtime hours.

191.  From approximately January 2017 until on or about March 2018, Defendants paid Plaintiff Romero $11.00 per hour for his regular hours and time and a half for the overtime hours.

192.  Defendants never granted Plaintiff Romero any breaks or meal periods of any kind.

193.  Plaintiff Romero was never notified by Defendants that his tips were being included as an offset for wages.

194.  Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Romero's wages.

195.  Defendants withheld a portion of Plaintiff Romero's tips; specifically, Defendants withheld 5% of his daily tips in order to pay the packers who had no contact with the customers.

196.  Defendants took improper and illegal deductions from Plaintiff Romero's wages; specifically, Defendants deducted $14 per week of meals that they never allowed him to take and a total of $250 of Plaintiff Romero's pay as a charge for the company delivery bag.

197.  No notification, either in the form of posted notices or other means, was ever given to Plaintiff Romero regarding overtime and wages under the FLSA and NYLL.

198.  Defendants did not give any notice to Plaintiff Romero, in English and in Spanish (Plaintiff Romero's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

199.  Defendants required Plaintiff Romero to purchase "tools of the trade" with his own funds—including the company delivery bag.

*Plaintiff Josue Mendez Olguin*

200.  Plaintiff Mendez has been employed by Defendants from approximately August 2017 until the present date.

201.  Defendants have ostensibly employed Plaintiff Mendez as a delivery worker.

202.  However, Plaintiff Mendez has also been required to spend a significant portion of his work day performing the non-tipped duties described above.

203.  Although Plaintiff Mendez has ostensibly been employed as a delivery worker, he has spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

204.  Plaintiff Mendez has regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

205.  Plaintiff Mendez's work duties have required neither discretion nor independent judgment.

206.  From approximately August 2017 until on or about November 2017, Plaintiff Mendez worked from approximately 4:00 p.m. until on or about 11:00 p.m., 2 days a week, from approximately 4:00 p.m. until on or about 1:00 a.m., 2 days a week, and from approximately 4:00 p.m. until on or about 12:00 a.m., 1 day a week (typically 40 hours per week).

207.  From approximately November 2017 until on or about April 2018, Plaintiff Mendez worked from approximately 4:00 p.m. until on or about 11:00 p.m., 3 days a week, from approximately 4:00 p.m. until on or about 1:00 a.m., 2 days a week, and from approximately 4:00 p.m. until on or about 12:00 a.m., 1 day a week (typically 47 hours per week).

208.  From approximately May 2018 until the present date, Plaintiff Mendez has worked from approximately 4:00 p.m. until on or about 11:00 p.m., 2 days a week, from approximately 4:00 p.m. until on or about 1:00 a.m., 2 days a week, and from approximately 4:00 p.m. until on or about 12:00 a.m., 1 day a week (typically 40 hours per week).

209.  Throughout his employment, Defendants have paid Plaintiff Mendez his wages by check.

210.  From approximately August 2017 until on or about November 2017, Defendants paid Plaintiff Mendez $9.50 per hour.

211.  From approximately November 2017 until on or about December 2017, Defendants paid Plaintiff Mendez $9.50 per hour for his regular hours and time and a half for the overtime hours.

212.  From approximately January 2018 until on or about April 2018, Defendants paid Plaintiff Mendez $11.05 per hour for his regular hours and time and a half for the overtime hours.

213.  From approximately May 2018 until the present date, Defendants have paid Plaintiff Mendez $11.05 per hour.

214.  Defendants have never granted Plaintiff Mendez any breaks or meal periods of any kind.

215.  Plaintiff Mendez has never been notified by Defendants that his tips are being included as an offset for wages.

216.  Defendants have not accounted for these tips in any daily or weekly accounting of Plaintiff Mendez's wages.

217.  Defendants have withheld a portion of Plaintiff Mendez's tips; specifically, Defendants have withheld 5% of his daily tips in order to pay the packers who had no contact with the customers.

218.  Defendants have taken improper and illegal deductions from Plaintiff Mendez's wages; specifically, Defendants have deducted a total of $250 of Plaintiff Mendez's pay as a charge for the company delivery bag.

219.   In addition, from approximately July 2018 until the present date Defendants have charged Plaintiff Mendez a daily fee of $5.00 in cash for the bicycle's/batteries rental.

220.  No notification, either in the form of posted notices or other means, has ever been given to Plaintiff Mendez regarding overtime and wages under the FLSA and NYLL.

221.   Defendants have never given any notice to Plaintiff Mendez, in English and in Spanish (Plaintiff Mendez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

222.   Defendants have required Plaintiff Mendez to purchase "tools of the trade" with his own funds—including the company delivery bag.

*Plaintiff Valente Ascencio*

223.  Plaintiff Ascencio was employed by Defendants from approximately 2008 until on or about August 8, 2018.

224.  Defendants ostensibly employed Plaintiff Ascencio as a delivery worker.

225.  However, Plaintiff Ascencio was also required to spend a significant portion of his work day performing the non-tipped duties described above.

226.  Although Plaintiff Ascencio ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

227.  Plaintiff Ascencio regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

228.  Plaintiff Ascencio's work duties required neither discretion nor independent judgment.

229.  From approximately August 2012 until on or about August 2017, Plaintiff Ascencio worked from approximately 8:00 a.m. until on or about 5:00 p.m., 3 days a week and from approximately 5:00 p.m. until on or about 1:00 a.m., 2 days a week (typically 43 hours per week).

230. From approximately August 2017 until on or about August 8, 2018, Plaintiff Ascencio worked from approximately 5:00 p.m. until on or about 1:00 a.m., 5 days a week (typically 40 hours per week).

231. Throughout his employment, Defendants paid Plaintiff Ascencio his wages by check.

232. From approximately August 2012 until on or about December 2012, Defendants paid Plaintiff Ascencio $10.00 per hour.

233. From approximately January 2013 until on or about December 2016, Defendants paid Plaintiff Ascencio $11.15 per hour for his regular hours and time and a half for the overtime hours.

234. From approximately January 2017 until on or about August 2017, Defendants paid Plaintiff Ascencio $12.25 per hour for his regular hours and time and a half for the overtime hours.

235. From approximately August 2017 until on or about December 2017, Defendants paid Plaintiff Ascencio $12.25 per hour.

236. From approximately January 2018 until on or about August 8, 2018, Defendants paid Plaintiff Ascencio $12.40 per hour.

237. Defendants never granted Plaintiff Ascencio any breaks or meal periods of any kind.

238. Plaintiff Ascencio was never notified by Defendants that his tips were being included as an offset for wages.

239. Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Ascencio's wages.

240. Defendants withheld a portion of Plaintiff Ascencio's tips; specifically, Defendants withheld 5% of his daily tips in order to pay the packers who had no contact with the customers.

241. Defendants took improper and illegal deductions from Plaintiff Ascencio's wages; specifically, Defendants deducted a total of $250 of Plaintiff Ascencio's pay as a charge for the company delivery bag.

242.  No notification, either in the form of posted notices or other means, was ever given to Plaintiff Ascencio regarding overtime and wages under the FLSA and NYLL.

243.  Defendants did not give any notice to Plaintiff Ascencio, in English and in Spanish (Plaintiff Ascencio's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

244.  Defendants required Plaintiff Ascencio to purchase "tools of the trade" with his own funds—including one company delivery bag.

*Plaintiff Yonier Alberto Giraldo Orozco*

245.  Plaintiff Giraldo has been employed by Defendants from approximately March 16, 2016 until the present date.

246.  Defendants have ostensibly employed Plaintiff Giraldo as a delivery worker.

247.  However, Plaintiff Giraldo has also been required to spend a significant portion of his work day performing the non-tipped duties described above.

248.  Although Plaintiff Giraldo has ostensibly been employed as a delivery worker, he has spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

249.  Plaintiff Giraldo has regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

250.  Plaintiff Giraldo's work duties have required neither discretion nor independent judgment.

251.  From approximately March 16, 2016 until on or about December 2016, Plaintiff Giraldo worked from approximately 8:00 a.m. until on or about 4:00 p.m., 2 days a week and from approximately 7:00 a.m. until on or about 4:00 p.m., 1 day a week (typically 25 hours per week).

252.  From approximately January 2017 until on or about December 2017, Plaintiff Giraldo worked from approximately 7:00 a.m. until on or about 4:00 p.m., 4 days a week (typically 36 hours per week).

253.  From approximately January 2018 until the present date, Plaintiff Giraldo has worked from approximately 7:00 a.m. until on or about 4:00 p.m., 4 days a week (typically 36 hours per week).

254.  Throughout his employment, Defendants have paid Plaintiff Giraldo his wages by check.

255.  From approximately March 16, 2016 until on or about December 2016, Defendants paid Plaintiff Giraldo $9.00 per hour.

256.  From approximately January 2017 until on or about December 2017, Defendants paid Plaintiff Giraldo $11.00 per hour.

257.  From approximately January 2018 until the present date, Defendants have paid Plaintiff Giraldo $11.50 per hour.

258.  Defendants have never granted Plaintiff Giraldo any breaks or meal periods of any kind.

259.  Plaintiff Giraldo has never been notified by Defendants that his tips are being included as an offset for wages.

260.  Defendants have not accounted for these tips in any daily or weekly accounting of Plaintiff Giraldo's wages.

261. Defendants have withheld a portion of Plaintiff Giraldo's tips; specifically, Defendants have withheld 5% of his daily tips in order to pay the packers who had no contact with the customers.

262. Defendants have taken improper and illegal deductions from Plaintiff Giraldo's wages; specifically, Defendants have deducted $250 from Plaintiff Giraldo's pay as a charge for the company delivery bag.

263. In addition, from approximately July 2018 until the present date, defendants have charged Plaintiff Giraldo a daily fee of $5.00 in cash for the bicycle's/batteries' rental.

264. No notification, either in the form of posted notices or other means, has ever been given to Plaintiff Giraldo regarding overtime and wages under the FLSA and NYLL.

265. Defendants have never given any notice to Plaintiff Giraldo, in English and in Spanish (Plaintiff Giraldo's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

266. Defendants have required Plaintiff Giraldo to purchase "tools of the trade" with his own funds—including one company delivery bag.

*Plaintiff Roman Olguin*

267. Plaintiff Roman was employed by Defendants from approximately September 15, 2017 until on or about July 18, 2018.

268. Defendants ostensibly employed Plaintiff Roman as a delivery worker.

269. However, Plaintiff Roman was also required to spend a significant portion of his work day performing the non-tipped duties described above.

270. Although Plaintiff Roman ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

271. Plaintiff Roman regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

272. Plaintiff Roman's work duties required neither discretion nor independent judgment.

273.  From approximately September 15, 2017 until on or about November 2017, Plaintiff Roman worked from approximately 4:00 p.m. until on or about 12:00 a.m., 5 days a week (typically 40 hours per week).

274.  From approximately December 2017 until on or about January 2018, Plaintiff Roman worked from approximately 4:00 p.m. until on or about 12:00 a.m., 6 days a week (typically 48 hours per week).

275.  From approximately February 2018 until on or about July 2018, Plaintiff Roman worked from approximately 4:00 p.m. until on or about 12:00 a.m., 5 days a week (typically 40 hours per week).

276.  Throughout his employment, Defendants paid Plaintiff Roman his wages by check.

277.  From approximately September 15, 2017 until on or about November 2017, Defendants paid Plaintiff Roman $9.50 per hour.

278.  From approximately December 2017 until on or about January 2018, Defendants paid Plaintiff Roman $9.50 per hour for his regular hours and time and a half for the overtime hours.

279.  From approximately February 2018 until on or about July 18, 2018, Defendants paid Plaintiff Roman $11.05 per hour.

280.  Defendants never granted Plaintiff Roman any breaks or meal periods of any kind.

281.  Plaintiff Roman was never notified by Defendants that his tips were being included as an offset for wages.

282.  Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Roman's wages.

283.  Defendants withheld a portion of Plaintiff Roman's tips; specifically, Defendants withheld 5% of his daily tips in order to pay the packers who had no contact with the customers.

284.    In addition,   during July 2018, Defendants charged Plaintiff Roman a daily fee of $5.00 in cash for the bicycle's/batteries' rental.

285.  No notification, either in the form of posted notices or other means, was ever given to Plaintiff Roman regarding overtime and wages under the FLSA and NYLL.

286.    Defendants did not give any notice to Plaintiff Roman, in English and in Spanish (Plaintiff Roman's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Plaintiff Abelardo Perez Torralba*

287.  Plaintiff Perez was employed by Defendants from approximately 2010 until on or about August 2015.

288.  Defendants ostensibly employed Plaintiff Perez as a delivery worker.

289.  However, Plaintiff Perez was also required to spend a significant portion of his work day performing the non-tipped duties described above.

290.  Although Plaintiff Perez ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

291.  Plaintiff Perez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

292.  Plaintiff Perez's work duties required neither discretion nor independent judgment.

293.  Throughout his employment with Defendants, Plaintiff Perez regularly worked in excess of 40 hours per week.

294.  From approximately August 2012 until on or about August 2015, Plaintiff Perez worked from approximately 6:45 a.m. until on or about 4:00 p.m., 6 days a week (typically 55.5 hours per week).

295.  Throughout his employment, Defendants paid Plaintiff Perez his wages by check.

296. From approximately August 2012 until on or about August 2015, Defendants paid Plaintiff Perez $11.00 per hour for his regular hours and time and a half for the overtime hours.

297. Defendants never granted Plaintiff Perez any breaks or meal periods of any kind.

298. Plaintiff Perez was never notified by Defendants that his tips were being included as an offset for wages.

299. Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Perez's wages.

300. Defendants withheld a portion of Plaintiff Perez's tips; specifically, Defendants withheld a portion of all of his daily tips in order to pay the packers who had no contact with the customers.

301. Defendants took improper and illegal deductions from Plaintiff Perez's wages; specifically, Defendants deducted five hours from Plaintiffs' weekly wages for meal breaks they didn't allow him to take; in addition defendants deducted a total of $250 from Plaintiff Perez's pay as a charge for the company delivery bag.

302. No notification, either in the form of posted notices or other means, was ever given to Plaintiff Perez regarding overtime and wages under the FLSA and NYLL.

303. Defendants did not give any notice to Plaintiff Perez, in English and in Spanish (Plaintiff Perez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

304. Defendants required Plaintiff Perez to purchase "tools of the trade" with his own funds—including one helmet, one bicycle, bike maintenance, two pair of lights, a chain and a lock, three shirts and the company delivery bag.

*Plaintiff William Paladines*

305.  Plaintiff Paladines was employed by Defendants from approximately June 2013 until on or about March 2016.

306.  Defendants ostensibly employed Plaintiff Paladines as a delivery worker.

307.  However, Plaintiff Paladines was also required to spend a significant portion of his work day performing the non-tipped duties described above.

308.  Although Plaintiff Paladines ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

309.  Plaintiff Paladines regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

310.  Plaintiff Paladines's work duties required neither discretion nor independent judgment.

311.  Throughout his employment with Defendants, Plaintiff Paladines regularly worked in excess of 40 hours per week.

312.  From approximately June 2013 until on or about June 2014, Plaintiff Paladines worked from approximately 4:00 p.m. until on or about 11:00 p.m. to 12:00 a.m., 6 days a week (typically 42 to 48 hours per week).

313.  From approximately July 2014 until on or about March 2016, Plaintiff Paladines worked from approximately 9:00 a.m. until on or about 8:30 p.m., 4 days a week and from approximately 9:00 a.m. until on or about 8:00 p.m., 2 days a week (typically 68 hours per week).

314.  However, from approximately November until on or about February of each year (winter time), Plaintiff Paladines worked from approximately 9:00 a.m. until on or about 8:00 p.m., 2 days a week, from approximately 9:00 a.m. until on or about 8:30 p.m., 4 days a week, and from approximately 9:00 a.m. until on or about 8:30 p.m., one extra day 2 weeks per month (typically 68 to 69.5 hours per week).

315.  Throughout his employment, Defendants paid Plaintiff Paladines his wages by check.

316.  From approximately June 2013 until on or about June 2014, Defendants paid Plaintiff Paladines $8.00 per hour for his regular hours and time and a half for the overtime hours.

317.  From approximately July 2014 until on or about March 2016, Defendants paid Plaintiff Paladines $9.00 per hour for his regular hours and time and a half for the overtime hours.

318.  Defendants never granted Plaintiff Paladines any breaks or meal periods of any kind.

319.  Nevertheless, Defendants deducted a percentage from Plaintiff Paladines's weekly paycheck for meals he never ate.

320.  Plaintiff Paladines was never notified by Defendants that his tips were being included as an offset for wages.

321.  Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Paladines's wages.

322.  Defendants withheld a portion of Plaintiff Paladines's tips; specifically, Defendants withheld a portion of all of his daily tips in order to pay the packers who had no contact with the customers.

323.  Defendants took improper and illegal deductions from Plaintiff Paladines's wages; specifically, Defendants deducted some hours from Plaintiff Paladines's weekly wages for meal breaks they didn't allow him to take and a total of $250 of Plaintiff Paladines's pay as a charge for the company delivery bag.

324.  No notification, either in the form of posted notices or other means, was ever given to Plaintiff Paladines regarding overtime and wages under the FLSA and NYLL.

325.  Defendants did not give any notice to Plaintiff Paladines, in English and in Spanish (Plaintiff Paladines's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

- 36 -

326.    Defendants required Plaintiff Paladines to purchase "tools of the trade" with his own funds—including 4 bicycles, bicycle maintenance, three helmets, 12 pair of lights and a company delivery bag.

*Plaintiff Juan Palacios*

327.  Plaintiff Palacios was employed by Defendants from approximately September 2012 until on or about July 2015.

328.  Defendants employed Plaintiff Palacios as a delivery worker.

329.  However, Plaintiff Palacios was also required to spend a significant portion of his work day performing the non-tipped duties described above.

330.  Although Plaintiff Palacios was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

331.  Plaintiff Palacios regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

332.  Plaintiff Palacios's work duties required neither discretion nor independent judgment.

333.  From approximately September 2012 until on or about April 2015, Plaintiff Palacios worked from approximately 5:00 p.m. until on or about 12:00 a.m., 5 days a week (typically 35 hours per week).

334.  From approximately May 2015 until on or about July 2015, Plaintiff Palacios worked from approximately 6:45 a.m. until on or about 3:00 p.m., 5 days a week (typically 41.25 hours per week).

335.  Throughout his employment, Defendants paid Plaintiff Palacios his wages by direct deposit.

336.  From approximately September 2012 until on or about April 2015, Defendants paid Plaintiff Palacios $9.00 per hour.

337.  From approximately May 2015 until on or about July 2015, Defendants paid Plaintiff Palacios $11.00 per hour for his regular hours and time and a half for the overtime hours.

338.  Defendants never granted Plaintiff Palacios any breaks or meal periods of any kind.

339.  Plaintiff Palacios was never notified by Defendants that his tips were being included as an offset for wages.

340.  Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Palacios's wages.

341.  Defendants withheld a portion of Plaintiff Palacios's tips; specifically, Defendants withheld a portion of all of his daily tips in order to pay the packers who had no contact with the customers.

342.  Defendants took improper and illegal deductions from Plaintiff Palacios's wages; specifically, defendants deducted a total of $250 from Plaintiff Palacios's pay as a charge for the company delivery bag.

343.  On a number of occasions, Defendants required Plaintiff Palacios to sign a document, the contents of which he was not allowed to review in detail.

344.  No notification, either in the form of posted notices or other means, was ever given to Plaintiff Palacios regarding overtime and wages under the FLSA and NYLL.

345.  Defendants did not give any notice to Plaintiff Palacios, in English and in Spanish (Plaintiff Palacios's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

346.  Defendants required Plaintiff Palacios to purchase "tools of the trade" with his own funds—including vests and a company delivery bag.

*Plaintiff Miguel Angel Galicia Jimenez*

347.  Plaintiff Galicia was employed by Defendants from approximately March 2010 until on or about December 2015 2017.

348.  Defendants ostensibly employed Plaintiff Galicia as a delivery worker.

349.  However, Plaintiff Galicia was also required to spend a significant portion of his work day performing the non-tipped duties described above.

350.  Although Plaintiff Galicia ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

351.  Plaintiff Galicia regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

352.  Plaintiff Galicia's work duties required neither discretion nor independent judgment.

353.  From approximately August 2012 until on or about December 2015, Plaintiff Galicia worked from approximately 3:00 p.m. until on or about 1:00 a.m., 6 days per week (typically 60 hours per week).

354.  However, from approximately June until on or about September of each of the years that he worked at Max Delivery, Plaintiff Galicia worked from approximately 5:00 p.m. until on or about 11:00 p.m., 3 days a week and from approximately 5:00 p.m. until on or about 1:00 a.m., 2 days a week (typically 34 hours per week).

355.  Throughout his employment, Defendants paid Plaintiff Galicia his wages by check.

356.  From approximately August 2012 until on or about December 2015, Defendants paid Plaintiff Galicia $10.00 per hour for his regular hours and time and a half for the overtime hours.

357.  Defendants never granted Plaintiff Galicia any breaks or meal periods of any kind.

358.  Plaintiff Galicia was never notified by Defendants that his tips were being included as an offset for wages.

359.   Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Galicia's wages.

360.   Defendants withheld a portion of Plaintiff Galicia's tips; specifically, Defendants withheld 5% of his daily tips in order to pay the packers who had no contact with the customers.

361.   Defendants took improper and illegal deductions from Plaintiff Galicia's wages; specifically, Defendants deducted a portion of Plaintiff Galicia's pay every time he was unable to deliver an order to a customer for reasons totally out of his control (around $100 per month).

362.   No notification, either in the form of posted notices or other means, was ever given to Plaintiff Galicia regarding overtime and wages under the FLSA and NYLL.

363.   Defendants did not give any notice to Plaintiff Galicia, in English and in Spanish (Plaintiff Galicia's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

364.   Defendants required Plaintiff Galicia to purchase "tools of the trade" with his own funds—including a backpack, one helmet, a delivery bag and a vest.

*Plaintiff Carlos Vidals Ramos*

365.   Plaintiff Vidals was employed by Defendants from approximately 2010 until on or about January 6, 2018.

366.   Defendants ostensibly employed Plaintiff Vidals as a delivery worker.

367.   However, Plaintiff Vidals was also required to spend a significant portion of his work day performing the non-tipped duties described above.

368.   Although Plaintiff Vidals ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

369.   Plaintiff Vidals regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

370.  Plaintiff Vidals's work duties required neither discretion nor independent judgment.

371.  From approximately September 2012 until on or about December 2014, Plaintiff Vidals worked from approximately 4:00 p.m. until on or about 10:00 p.m. to 10:30 p.m., 5 days a week (typically 30 to 32.5 hours per week).

372.  From approximately January 2015 until on or about May 2015, Plaintiff Vidals worked from approximately 4:00 p.m. until on or about 12:30 p.m. 5 to 6 days per week (typically 42.5 to 51 hours per week)

373.  From approximately June 2015 until on or about January 6, 2018, Plaintiff Vidals worked from approximately 4:00 p.m. until on or about 10:00 p.m. to 10:30 p.m., 5 days a week (typically 30 to 32.5) per week.

374.  Throughout his employment, Plaintiff Vidals worked from approximately 4:00 p.m. until on or about 10:30 p.m., 5 days a week and from approximately 4:00 p.m. until on or about 12:00 a.m., one day a week one week per month (typically 40.5 hours per week).

375.  Throughout his employment, Defendants paid Plaintiff Vidals his wages by check.

376.  From approximately September 2012 until on or about December 2015, Defendants paid Plaintiff Vidals $10.00 per hour for his regular hours and time and a half for the overtime hours.

377.  From approximately January 2016 until on or about March 2017, Defendants paid Plaintiff Vidals $11.50 per hour for his regular hours and time and a half for the overtime hours.

378.  From approximately April 2017 until on or about January 6, 2018, Defendants paid Plaintiff Vidals $12.00 per hour for his regular hours and time and a half for the overtime hours.

379.  Defendants never granted Plaintiff Vidals any breaks or meal periods of any kind.

380.  Plaintiff Vidals was never notified by Defendants that his tips were being included as an offset for wages.

381. Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Vidals's wages.

382. Defendants withheld a portion of Plaintiff Vidals's tips; specifically, Defendants withheld 5% of his daily tips in order to pay the packers who had no contact with the customers.

383. Defendants took improper and illegal deductions from Plaintiff Vidals's wages; specifically, Defendants deducted approximately $1,210 from Plaintiff Vidals's pay as a charge for the company delivery bags and a water bag.

384. Defendants did not give any notice to Plaintiff Vidals, in English and in Spanish (Plaintiff Vidals's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

385. Defendants required Plaintiff Vidals to purchase "tools of the trade" with his own funds—including one helmet, monthly bicycle maintenance and four company delivery bags.

*Plaintiff Misael Leon Sanchez*

386. Plaintiff Leon has been employed by Defendants from approximately June 2014 until the present date.

387. Defendants have ostensibly employed Plaintiff Leon as a delivery worker.

388. However, Plaintiff Leon has also been required to spend a significant portion of his work day performing the non-tipped duties described above.

389. Although Plaintiff Leon has ostensibly been employed as a delivery worker, he has spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

390. Plaintiff Leon has regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

391. Plaintiff Leon's work duties have required neither discretion nor independent judgment.

392. From approximately June 2014 until on or about June 2016, Plaintiff Leon worked from approximately 4:00 p.m. until on or about 10:00 p.m., 6 days a week (typically 36 hours per week).

393. From approximately July 2016 until the present date, Plaintiff Leon has worked from approximately 4:00 p.m. until on or about 11:00 p.m., one day a week, from approximately 4:00 p.m. until on or about 10:00 p.m., two days a week, and from approximately 4:00 p.m. until on or about 11:00 p.m. to 12:00 a.m., one day a week (typically 26 to 27 hours per week).

394. Throughout his employment, Defendants have paid Plaintiff Leon his wages by check.

395. From approximately June 2014 until on or about December 2016, Defendants paid Plaintiff Leon $10.25 per hour.

396. From approximately January 2017 until the present date, Defendants have paid Plaintiff Leon $11.25 per hour.

397. Plaintiff Leon has never been notified by Defendants that his tips are being included as an offset for wages.

398. Defendants have not accounted for these tips in any daily or weekly accounting of Plaintiff Leon's wages.

399. Defendants have withheld a portion of Plaintiff Leon's tips; specifically, Defendants have withheld 5% of his daily tips in order to pay the packers who have no contact with the customers.

400.  Defendants have taken improper and illegal deductions from Plaintiff Leon's wages; specifically, Defendants have deducted a total of $250 from Plaintiff Leon's pay as a charge for a delivery bag.

401.  In addition, from approximately July 2018 until the present date, Defendants have been charging Plaintiff Leon a daily fee of $5.00 in cash for the bicycle's/batteries' rental.

402.  No notification, either in the form of posted notices or other means, has ever been given to Plaintiff Leon regarding overtime and wages under the FLSA and NYLL.

403.  Defendants have never given any notice to Plaintiff Leon, in English and in Spanish (Plaintiff Leon's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

404.  Defendants have required Plaintiff Leon to purchase "tools of the trade" with his own funds—including the company delivery bag, lights and two helmets.

*Plaintiff Armando Rafael Mesinas*

405.  Plaintiff Mesinas was employed by Defendants from approximately November 2009 until on or about September 2015.

406.  Defendants ostensibly employed Plaintiff Mesinas as a delivery worker.

407.  However, Plaintiff Mesinas was also required to spend a significant portion of his work day performing the non-tipped duties described above.

408.  Although Plaintiff Mesinas ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

409.  Plaintiff Mesinas regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

410. Plaintiff Mesinas's work duties required neither discretion nor independent judgment.

411.  From approximately September 2012 until on or about September 2015, Plaintiff Mesinas worked from approximately 5:00 p.m. until on or about 11:00 p.m. to 12:00 a.m., 5 days a week (typically 30 to 35 hours per week).

412.  However, from approximately January until on or about April of each year (winter time), Plaintiff Mesinas worked from approximately 5:00 p.m. until on or about 11:00 p.m. to 12:00 a.m., 6 days a week (typically 36 to 42 hours per week).

413.  Throughout his employment, Defendants paid Plaintiff Mesinas his wages by check.

414.  From approximately September 2012 until on or about September 2015, Defendants paid Plaintiff Mesinas $10.00 per hour for his regular hours and time and a half for the overtime hours.

415.  Defendants never granted Plaintiff Mesinas any breaks or meal periods of any kind.

416.  Plaintiff Mesinas was never notified by Defendants that his tips were being included as an offset for wages.

417.  Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Mesinas's wages.

418.  Defendants withheld a portion of Plaintiff Mesinas's tips; specifically, Defendants withheld 5% of his daily tips in order to pay the packers who had no contact with the customers.

419.  Defendants took improper and illegal deductions from Plaintiff Mesinas's wages; specifically, Defendants deducted $300 from Plaintiff Mesinas's pay as a charge for one company delivery bags.

420.  No notification, either in the form of posted notices or other means, was ever given to Plaintiff Mesinas regarding overtime and wages under the FLSA and NYLL.

421.    Defendants did not give any notice to Plaintiff Mesinas, in English and in Spanish (Plaintiff Mesinas's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

422.    Defendants required Plaintiff Mesinas to purchase "tools of the trade" with his own funds—including five bicycles, monthly bicycle maintenance, four helmets, one rain coat and one company delivery bag.

*Plaintiff Hernan Lopez Carranza*

423.    Plaintiff Lopez was employed by Defendants from approximately September 2012 until on or about December 2016.

424.    Defendants ostensibly employed Plaintiff Lopez as a delivery worker.

425.    However, Plaintiff Lopez was also required to spend a significant portion of his work day performing the non-tipped duties described above.

426.    Although Plaintiff Lopez ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

427.    Plaintiff Lopez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

428.    Plaintiff Lopez's work duties required neither discretion nor independent judgment.

429.    Throughout his employment with Defendants, Plaintiff Lopez regularly worked in excess of 40 hours per week.

430.    From approximately September 2012 until on or about June 2013, Plaintiff Lopez worked from approximately 6:00 p.m. until on or about 12:00 a.m., 2 days a week and from approximately 6:00 p.m. until on or about 11:00 p.m., one day a week (typically 17 hours per week).

431.  From approximately July 2013 until on or about December 2016, Plaintiff Lopez worked from approximately 4:00 p.m. until on or about 10:00 p.m. to 11:00 p.m., 3 days a week and from approximately 12:00 p.m. until on or about 10:30 p.m. to 11:30 p.m., 2 days a week (typically 39 to 44 hours per week).

432.  Throughout his employment, Defendants paid Plaintiff Lopez his wages by check.

433.  From approximately September 2012 until on or about December 2012, Defendants paid Plaintiff Lopez $8.00 per hour.

434.  From approximately January 2013 until on or about June 2013, Defendants paid Plaintiff Lopez $9.00 per hour.

435.  From approximately July 2013 until on or about December 2014, Defendants paid Plaintiff Lopez $9.00 per hour for his regular hours and time and a half for the overtime hours.

436.  From approximately January 2015 until on or about December 2016, Defendants paid Plaintiff Lopez $10.00 per hour for his regular hours and time and a half for the overtime hours.

437.  Defendants never granted Plaintiff Lopez any breaks or meal periods of any kind.

438.  Plaintiff Lopez was never notified by Defendants that his tips were being included as an offset for wages.

439.  Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Lopez's wages.

440.  Defendants withheld a portion of Plaintiff Lopez's tips; specifically, Defendants withheld 5% of his daily tips in order to pay the packers who had no contact with the customers.

441.  Defendants took improper and illegal deductions from Plaintiff Lopez's wages; specifically, Defendants deducted a total of $500 from Plaintiff Lopez's pay as a charge for two company delivery bags and Defendants also deducted a portion of Plaintiff Lopez's pay every time he was unable to deliver an order to a customer for reasons totally out of his control.

442.  No notification, either in the form of posted notices or other means, was ever given to Plaintiff Lopez regarding overtime and wages under the FLSA and NYLL.

443.  Defendants did not give any notice to Plaintiff Lopez, in English and in Spanish (Plaintiff Lopez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

444.  Defendants required Plaintiff Lopez to purchase "tools of the trade" with his own funds—including two company delivery bags, a pair of lights and the weekly bicycle maintenance.

*Plaintiff Marcos Alcantara Hernandez*

445.  Plaintiff Alcantara was employed by Defendants from approximately August 2014 until on or about April 2016.

446.  Defendants ostensibly employed Plaintiff Alcantara as a delivery worker.

447.  However, Plaintiff Alcantara was also required to spend a significant portion of his work day performing the non-tipped duties described above.

448.  Although Plaintiff Alcantara ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

449.  Plaintiff Alcantara regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

450.  Plaintiff Alcantara's work duties required neither discretion nor independent judgment.

451.  From approximately August 2014 until on or about April 2016, Plaintiff Alcantara worked from approximately 4:00 p.m. until on or about 9:00 p.m., 3 days a week and from approximately 4:00 p.m. until on or about 10:00 p.m. to 11:00 p.m., 2 days a week (typically 27 to 29 hours per week).

452.  Throughout his employment, Defendants paid Plaintiff Alcantara his wages by check.

453. From approximately August 2014 until on or about April 2016, Defendants paid Plaintiff Alcantara $7.25 per hour.

454. Defendants never granted Plaintiff Alcantara any breaks or meal periods of any kind.

455. Plaintiff Alcantara was never notified by Defendants that his tips were being included as an offset for wages.

456. Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Alcantara's wages.

457. Defendants withheld a portion of Plaintiff Alcantara's tips; specifically, Defendants withheld 5% of his daily tips in order to pay the packers who had no contact with the customers.

458. Defendants took improper and illegal deductions from Plaintiff Alcantara's wages; specifically, Defendants deducted a total of $654 from Plaintiff Alcantara's pay as a charge for two company delivery bags.

459. No notification, either in the form of posted notices or other means, was ever given to Plaintiff Alcantara regarding overtime and wages under the FLSA and NYLL.

460. Defendants did not give any notice to Plaintiff Alcantara, in English and in Spanish (Plaintiff Alcantara's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

461. Defendants required Plaintiff Alcantara to purchase "tools of the trade" with his own funds—including a lock, a chain and two company delivery bag.

*Plaintiff Jesus Angel Basurto*

462. Plaintiff Basurto was employed by Defendants from approximately November 2011 until on or about May 2017.

463. Defendants ostensibly employed Plaintiff Basurto as a delivery worker.

464. However, Plaintiff Basurto was also required to spend a significant portion of his work day performing the non-tipped duties described above.

465. Although Plaintiff Basurto ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

466. Plaintiff Basurto regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

467. Plaintiff Basurto's work duties required neither discretion nor independent judgment.

468. From approximately September 2012 until on or about August 2016, Plaintiff Basurto worked from approximately 5:00 p.m. until on or about 1:00 a.m., 5 days a week (typically 40 hours per week).

469. However, from approximately May until on or about September of every year (summertime), Plaintiff Basurto worked from approximately 5:00 p.m. until on or about 11:00 p.m., 5 days a week (typically 30 hours per week).

470. Throughout his employment, Defendants paid Plaintiff Basurto his wages by check.

471. From approximately September 2012 until on or about January 2016, Defendants paid Plaintiff Basurto $9.00 per hour.

472. From approximately January 2016 until on or about August 2016, Defendants paid Plaintiff Basurto $11.00 per hour.

473. Defendants never granted Plaintiff Basurto any breaks or meal periods of any kind.

474. Plaintiff Basurto was never notified by Defendants that his tips were being included as an offset for wages.

475. Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Basurto's wages.

476. Defendants withheld a portion of Plaintiff Basurto's tips; specifically, Defendants withheld 5% of his tips in order to pay the packers who had no contact with the customers.

477. Defendants took improper and illegal deductions from Plaintiff Basurto's wages; specifically, Defendants deducted a total of $500 from Plaintiff Basurto's pay as a charge for two company delivery bags; Defendants also deducted a portion of Plaintiff Basurto's pay for 2 broken wine bottles.

478. No notification, either in the form of posted notices or other means, was ever given to Plaintiff Basurto regarding overtime and wages under the FLSA and NYLL.

479. Defendants did not give any notice to Plaintiff Basurto, in English and in Spanish (Plaintiff Basurto's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

480. Defendants required Plaintiff Basurto to purchase "tools of the trade" with his own funds—including three bicycles, bicycle's monthly maintenance, three helmets, three rain coats and two company delivery bags.

*Plaintiff Javier Flores Segundo*

481. Plaintiff Flores was employed by Defendants from approximately March 2012 until on or about November 2015.

482. Defendants employed Plaintiff Flores as a delivery worker.

483. Plaintiff Flores regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

484. Plaintiff Flores's work duties required neither discretion nor independent judgment.

485. From approximately September 2012 until on or about November 2015, Plaintiff Flores worked from approximately 6:00 p.m. until on or about 1:00 a.m. to 1:15 a.m., 6 days a week (typically 42 to 43.5 hours per week).

486. Throughout his employment, Defendants paid Plaintiff Flores his wages by check.

487. During the month of September 2012, Defendants paid Plaintiff Flores $8.00 per hour for his regular hours and time and a half for the overtime hours.

488. From approximately October 2012 until on or about November 2015, Defendants paid Plaintiff Flores $9.00 per hour for his regular hours and time and a half for the overtime hours.

489. Defendants never granted Plaintiff Flores any breaks or meal periods of any kind.

490. Plaintiff Flores was never notified by Defendants that his tips were being included as an offset for wages.

491. Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Flores's wages.

492. Defendants withheld a portion of Plaintiff Flores's tips; specifically, Defendants withheld 5% of his tips in order to pay the packers who had no contact with the customers.

493. Defendants took improper and illegal deductions from Plaintiff Flores's wages; specifically, Defendants deducted a total of $850 from Plaintiff Flores's pay for two company delivery bags.

494. No notification, either in the form of posted notices or other means, was ever given to Plaintiff Flores regarding overtime and wages under the FLSA and NYLL.

495. Defendants did not give any notice to Plaintiff Flores, in English and in Spanish (Plaintiff Flores's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

496. Defendants required Plaintiff Flores to purchase "tools of the trade" with his own funds—including a bicycle, monthly bicycle maintenance, two company delivery bags, and work supplies.

*Plaintiff Jose Gustavo Peralta Avendano*

497.  Plaintiff Peralta was employed by Defendants from approximately 2006 until on or about June 2014.

498.  Defendants employed Plaintiff Peralta as a delivery worker.

499.  However, Plaintiff Peralta was also required to spend a significant portion of his work day performing the non-tipped duties described above.

500.  Although Plaintiff Peralta was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

501.  Plaintiff Peralta regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

502.  Plaintiff Peralta's work duties required neither discretion nor independent judgment.

503.  From approximately September 2012 until on or about June 2014, Plaintiff Peralta worked from approximately 8:45 a.m. until on or about 4:00 p.m. to 5:00 p.m., 5 days a week (typically 36.25 to 41.25 hours per week).

504.  Throughout his employment, Defendants paid Plaintiff Peralta his wages by check.

505.  From approximately September 2012 until on or about June 2014, Defendants paid Plaintiff Peralta $9.50 per hour for his regular hours and time and a half for the overtime hours.

506.  Defendants never granted Plaintiff Peralta any breaks or meal periods of any kind.

507.  Plaintiff Peralta was never notified by Defendants that his tips were being included as an offset for wages.

508.  Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Peralta's wages.

509.  Defendants withheld a portion of Plaintiff Peralta's tips; specifically, Defendants withheld 10% of his tips in order to pay the packers and other workers who had no contact with the customers (around $5.00 to $10.00 per day).

510.   Defendants took improper and illegal deductions from Plaintiff Peralta's wages; specifically, Defendants deducted a portion from Plaintiff Peralta's pay if clients complained about a mistake in a delivery.

511.   No notification, either in the form of posted notices or other means, was ever given to Plaintiff Peralta regarding overtime and wages under the FLSA and NYLL.

512.   Defendants did not give any notice to Plaintiff Peralta, in English and in Spanish (Plaintiff Peralta's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

513.   Defendants required Plaintiff Peralta to purchase "tools of the trade" with his own funds—including a bicycle and the bicycle maintenance.

*Plaintiff Osban Yovany Londono Castrillon*

514.   Plaintiff Londono has been employed by Defendants from approximately September 2015 until the present date.

515.   Defendants have ostensibly employed Plaintiff Londono as a delivery worker.

516.   However, Plaintiff Londono has also been required to spend a significant portion of his work day performing the non-tipped duties described above.

517.   Although Plaintiff Londono has ostensibly been employed as a delivery worker, he has spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

518.   Plaintiff Londono has regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

519.   Plaintiff Londono's work duties have required neither discretion nor independent judgment.

520. From approximately September 2015 until on or about September 2016, Plaintiff Londono worked from approximately 2:00 p.m. until on or about 10:20 p.m. to 11:00 p.m., 5 days a week (typically 41.65 to 45 hours per week).

521. From approximately October 2016 until on or about May 2018, Plaintiff Londono worked from approximately 8:00 a.m. until on or about 4:00 p.m., 5 days a week (typically 40 hours per week).

522. From approximately May 2018 until the present date, Plaintiff Londono has worked from approximately 7:00 a.m. or 8:00 a.m. until on or about 3:00 p.m. to 4:00 p.m., 5 days a week (typically 40 hours per week).

523. Throughout his employment, Defendants have paid Plaintiff Londono his wages by check.

524. From approximately September 2015 until on or about December 2017, Defendants paid Plaintiff Londono $9.00 per hour for the first 40 hours worked and $13.50 per hour for some of his overtime hours.

525. From approximately January 2018 until the present date, Defendants have paid Plaintiff Londono $11.50 per hour.

526. Defendants have never granted Plaintiff Londono any breaks or meal periods of any kind.

527. Plaintiff Londono has never been notified by Defendants that his tips are being included as an offset for wages.

528. Defendants have not accounted for these tips in any daily or weekly accounting of Plaintiff Londono's wages.

529. Defendants have withheld a portion of Plaintiff Londono's tips; specifically, Defendants have withheld 5% of his tips in order to pay the packers who had no contact with the

customers; in addition, defendants also have withheld a portion of his tips and have used the funds for the maintenance of the company's bicycles.

530.    Defendants have taken improper and illegal deductions from Plaintiff Londono's wages; specifically, Defendants have deducted a total of $150 as a charge for a company delivery bag.

531.    In addition, from approximately July 2018 until the present date Defendants have charged Plaintiff Londono a daily rate of $5.00 for the bicycle's batteries; Defendants also required Plaintiff Londono to pay a total of $800 for a stolen bicycle.

532.    No notification, either in the form of posted notices or other means, has ever been given to Plaintiff Londono regarding overtime and wages under the FLSA and NYLL.

533.    Defendants have never given any notice to Plaintiff Londono, in English and in Spanish (Plaintiff Londono's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

534.    Defendants have required Plaintiff Londono to purchase "tools of the trade" with his own funds—including one company delivery bag, bicycle maintenance and one bicycle.

*Defendants' General Employment Practices*

535.    At all times relevant to this Complaint, Defendants have maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work in excess of 40 hours a week without paying them appropriate minimum wage, spread of hours pay, and overtime compensation as required by federal and state laws.

536.    Plaintiffs have been victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they have been owed for the hours they have worked.

537.    Defendants' pay practices have resulted in Plaintiffs not receiving payment for all their hours worked, and have resulted in Plaintiffs' effective rate of pay falling below the required minimum wage rate.

538.    Defendants have habitually required Plaintiffs to work additional hours beyond their regular shifts but have not provided them with any additional compensation.

539.    Defendants have required Plaintiffs and all other delivery workers to perform general non-tipped tasks in addition to their primary duties as delivery workers.

540.    These Plaintiffs and all similarly situated employees, have ostensibly been employed as tipped employees by Defendants, although their actual duties included a significant amount of time spent performing the non-tipped duties outlined above.

541.     The Plaintiffs' duties have not been incidental to their occupation as tipped workers, but instead have constituted entirely unrelated general delivery company work with duties, including the non-tipped duties described above.

542.   These Plaintiffs and all other tipped workers have been paid either at the lowered tip-credited rate or at a rate below the minimum wage by Defendants.

543.    However, under state law, Defendants are not entitled to a tip credit because the tipped worker's and these Plaintiffs' non-tipped duties exceed 20% of each workday (or 2 hours a day, whichever is less) (12 N.Y.C.R.R. § 146).

544.    New York State regulations provide that an employee cannot be classified as a tipped employee on any day in which he or she has been assigned to work in an occupation in which tips are not customarily received. (12 N.Y.C.R.R. §§137-3.3 and 137-3.4). Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

545.    In violation of federal and state law as codified above, Defendants have classified these Plaintiffs and other tipped workers as tipped employees, and have paid them either at the lowered tip-credited rate or at a rate that is below the minimum wage when they should have classified them as non-tipped employees and paid them at the minimum wage rate.

546.    Defendants have failed to inform Plaintiffs who received tips that Defendants have intended to take a deduction against Plaintiffs' earned wages for tip income, as required by the NYLL before any deduction may be taken.

547.    Defendants have failed to inform Plaintiffs who received tips, that their tips are being credited towards the payment of the minimum wage.

548.    Defendants have failed to maintain a record of tips earned by Plaintiffs who have worked as delivery workers for the tips they have received. As part of its regular business practice, Defendants have intentionally, willfully, and repeatedly harmed Plaintiffs who have received tips, by engaging in a pattern, practice, and/or policy of violating the FLSA and the NYLL. This policy and pattern or practice included depriving delivery workers of a portion of the tips earned during the course of employment.

549.    Defendants have unlawfully misappropriated charges purported to be gratuities received by tipped Plaintiffs, and other tipped employees, in violation of New York Labor Law § 196-d (2007).

550.    Under the FLSA and NYLL, in order to be eligible for a "tip credit," employers of tipped employees must either allow employees to keep all the tips that they receive or forgo the tip credit or pay them the full hourly minimum wage.

551.    Defendants' time keeping system has not reflect the actual hours that Plaintiffs have worked.

552. On a number of occasions, Defendants have required Plaintiffs to sign a document the contents of which they have not been allowed to review in detail.

553. Defendants have failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

554. Upon information and belief, these practices by Defendants have been done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) have worked, and to avoid paying Plaintiffs properly for their full hours worked.

555. Defendants have engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

556. Defendants' unlawful conduct is intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated former workers.

557. Defendants have failed to provide Plaintiffs  and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

558.    Plaintiffs bring their FLSA minimum wage, overtime compensation, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA and Rule 23 Class members"), i.e., persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA and Rule 23 Class Period").

559.    At all relevant times, Plaintiffs and other members of the FLSA and Rule 23 Class were similarly situated in that they had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required minimum wage, overtime pay at a one and one-half their regular rates for work in excess of forty (40) hours per workweek under the FLSA, and willfully failing to keep records as required under the FLSA.

560.    The claims of Plaintiffs stated herein are similar to those of the other employees.

## FEDERAL RULE 23 CLASS ACTION ALLEGATIONS

561.    Plaintiffs sue on their own behalf and on behalf of a class of persons similarly situated under Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure.

562.    Plaintiffs bring their New York Labor Law minimum wage, overtime, spread-of-hours, wage deduction, and liquidated damages claims on behalf of all persons who are or were employed by Defendants in the State of New York, on or after the date that is six years before the filing of the complaint in this case, to entry of judgment in this case (the "Class Period"). All said persons, including Plaintiffs, are referred to herein as the "Class."

563.    The persons in the Class are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and facts on which the calculation of that number are presently within the sole control of Defendants, there are approximately over sixty members of the Class during the Class Period.

564.    There are questions of law and fact common to the Class including:

a)  What proof of hours worked is sufficient where Defendants fail in their duty to maintain time records;

b)  What were the policies, practices, programs, procedures, protocols and plans of Defendants regarding payment of wages for all hours worked;

c)  What were the policies, practices, programs, procedures, protocols and plans of Defendants regarding payment of at least minimum wages for all hours worked;

d)  Whether Defendants failed and/or refused to pay Plaintiffs the minimum wage and overtime at the premium rate within the meaning of the New York Labor Law;

e)  Whether Defendants failed and/or refused to pay Plaintiffs "Spread of Hours" Pay;

f)  Whether Defendants improperly deducted "shorts" from the Plaintiffs' wages;

g)  At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay the class members for their work; and

h)  What are the common conditions of employment and in the workplace, such as recordkeeping, clock-in procedures, breaks, and policies and practices that affect whether the class was paid at overtime rates for minimum wage and overtime work.

565.    The claims of the representative parties are typical of the claims of the class. Plaintiffs and the other class members were subjected to Defendants' policies, practices, programs, procedures, protocols and plans alleged herein concerning non-payment of overtime, non-payment of wages, and failure to keep required records. The job duties of the named Plaintiffs were and are typical of those of class members.

566.    The representative parties will fairly and adequately protect the interests of the Class and have no interests antagonistic to the class. The Named Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

567.    The common questions of law and fact predominate over questions affecting only individual members.

568.    A class action is superior to other available methods for fairly and efficiently adjudicating controversy, particularly in the context of wage and hour litigation, where individual plaintiffs lack the financial resources to prosecute a lawsuit in federal court against corporate defendants vigorously. The damages suffered by individual class members are small, compared to the expense and burden of individual prosecution of this litigation. Class action treatment will obviate unduly duplicative litigation and the possibility of inconsistent judgments.

569.    Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

**FIRST CAUSE OF ACTION**

**VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA**

570.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

571.    At all times relevant to this action, Defendants have been Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).  Defendants have had the power to hire and fire Plaintiffs (and the FLSA and Rule 23 Class Members), controlled the terms and conditions of their employment, and determined the rate and method of any compensation in exchange for their employment.

572.    At all times relevant to this action, Defendants have been engaged in commerce or in an industry or activity affecting commerce.

573.    Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

574.    Defendants failed to pay Plaintiffs (and the FLSA and Rule 23 Class members) at

the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

575.    Defendants' failure to pay Plaintiffs (and the FLSA and Rule 23 Class members) at the applicable minimum hourly rate is willful within the meaning of 29 U.S.C. § 255(a).

576.    Plaintiffs (and the FLSA and Rule 23 Class members) have been damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA

577.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

578.    Defendants, in violation of 29 U.S.C. § 207(a)(1), have failed to pay Plaintiffs (and the FLSA and Rule 23 Class members) overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

579.    Defendants' failure to pay Plaintiffs (and the FLSA and Rule 23 Class members), overtime compensation has been willful within the meaning of 29 U.S.C. § 255(a).

580.    Plaintiffs (and the FLSA and Rule 23 Class members) have been damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

### VIOLATION OF THE NEW YORK MINIMUM WAGE ACT

581.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

582.    At all times relevant to this action, Defendants have been Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651. Defendants have had the power to hire and fire Plaintiffs, controlled the terms and conditions of their employment, and determined the rates and methods of any compensation in exchange for their employment.

583.    Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, have paid Plaintiffs (and the FLSA and Rule 23 Class members), less than the minimum wage.

584.    Defendants' failure to pay Plaintiffs (and the Rule 23 Class members), the minimum wage is willful within the meaning of N.Y. Lab. Law § 663.

585.    Plaintiffs (and the Rule 23 Class members), have been damaged in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

## VIOLATION OF THE OVERTIME PROVISIONS

## OF THE NEW YORK STATE LABOR LAW

586.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

587.    Defendants, in violation of N.Y. Lab. Law § 190 *et seq.*, and supporting regulations of the New York State Department of Labor, have failed to pay Plaintiffs (and the Rule 23 Class members), overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

588.    Defendants' failure to pay Plaintiffs (and the Rule 23 Class members), overtime compensation is willful within the meaning of N.Y. Lab. Law § 663.

589.    Plaintiffs (and the Rule 23 Class members), have been damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

## VIOLATION OF THE SPREAD OF HOURS WAGE ORDER

## OF THE NEW YORK COMMISSIONER OF LABOR

590.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

591.    Defendants have failed to pay Plaintiffs (and the Rule 23 Class members), one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiffs' spread of hours has exceeded ten hours in violation of NYLL §§ 650 *et seq*. and 12 N.Y.C.R.R. §§ 146-1.6.

592.    Defendants' failure to pay Plaintiffs (and the Rule 23 Class members), an additional hour's pay for each day Plaintiffs' spread of hours exceeded ten hours is willful within the meaning of NYLL § 663.

593.    Plaintiffs have been damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

## VIOLATION OF THE NOTICE AND RECORDKEEPING

## REQUIREMENTS OF THE NEW YORK LABOR LAW

594.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

595.    Defendants have failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

596.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## SEVENTH CAUSE OF ACTION

## RECOVERY OF EQUIPMENT COSTS

597.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

598.    Defendants have required Plaintiffs (and the Rule 23 Class members), to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their jobs, further reducing their wages in violation of the FLSA and NYLL. 29 U.S.C. § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

599.    Plaintiffs (and Rule 23 class members) have been damaged in an amount to be determined at trial.

## EIGHT CAUSE OF ACTION

## UNLAWFUL DEDUCTIONS FROM TIPS IN VIOLATION

## OF THE NEW YORK LABOR LAW

600.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

601.    At all relevant times, Defendants have been Plaintiffs' (and the Rule 23 Class members'), employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

602.    New York State Labor Law § 196-d prohibits any employer or his agents, including owners and managers, from demanding or accepting, directly or indirectly, any part of the gratuities received by an employee, or retaining any part of a gratuity, or any charge purported to be a gratuity, for an employee.

603.    Defendants have unlawfully misappropriated a portion of Plaintiffs' tips that have been received from customers.

604.    Defendants have knowingly and intentionally retained a portion of Plaintiffs' (and the Rule 23 Class members'), tips in violations of the NYLL and supporting Department of Labor Regulations.

605.    Plaintiffs (and the Rule 23 Class members), have been damaged in an amount to be determined at trial.

## NINTH CAUSE OF ACTION

## UNLAWFUL DEDUCTIONS FROM WAGES IN VIOLATION

## OF THE NEW YORK LABOR LAW

606.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

607.    At all relevant times, Defendants have been Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

608.    Defendants have made unlawful deductions from Plaintiffs' (and the Rule 23 Class members'), wages; specifically, Defendants deducted money from Plaintiffs' weekly pay for meals that they were never allowed Plaintiffs to take; they also deducted $5.00 daily for the bicycle's batteries, for deliveries plaintiffs were unable to deliver to customers and a portion of Plaintiffs' pay as a charge for the company delivery bags.

609.    The deductions made from Plaintiffs' (and the Rule 23 Class members'), wages were not authorized or required by law.

610.    Through their knowing and intentional efforts to take unauthorized deductions from Plaintiffs' (and the Rule 23 Class members'), wages, Defendants willfully violated NYLL, Article 6, §§ 190 *et seq.*, and supporting New York State regulations.

611.    Plaintiffs (and the Rule 23 Class members'), have been damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants by:

(a)    Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency

of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)    Declaring that Defendants have violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA and Rule 23 Class members;

(c)    Declaring that Defendants have violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA and Rule 23 Class members;

(d)    Declaring that Defendants have violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' and the FLSA and Rule 23 Class members' compensation, hours, wages, and any deductions or credits taken against wages;

(e)    Declaring that Defendants' violations of the provisions of the FLSA are willful as to Plaintiffs and the FLSA and Rule 23 Class members;

(f)    Awarding Plaintiffs and the FLSA and Rule 23 Class members damages for the amount of unpaid minimum wage, overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g)    Awarding Plaintiffs and the FLSA and Rule 23 Class members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum wage and overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)    Declaring that Defendants have violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs (and the Rule 23 Class members);

(i)      Declaring that Defendants have violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs (and the Rule 23 Class members);

(j)      Declaring that Defendants have violated the spread-of-hours requirements of the NYLL and supporting regulations as to Plaintiffs (and the Rule 23 Class members);

(k)      Declaring that Defendants have violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs' (and the Rule 23 Class members'), compensation, hours, wages and any deductions or credits taken against wages;

(l)      Declaring that Defendants' violations of the provisions of the NYLL and spread of hours wage order are willful as to Plaintiffs (and the Rule 23 Class members);

(m)      Awarding Plaintiffs (and the Rule 23 Class members), damages for the amount of unpaid minimum wage and overtime compensation, and for any improper deductions or credits taken against wages, as well as awarding spread of hours pay under the NYLL as applicable

(n)      Awarding Plaintiffs (and the Rule 23 Class members), damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(o)      Awarding Plaintiffs (and the Rule 23 Class members), liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage, overtime compensation, and spread of hours pay shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(p)      Awarding Plaintiffs and the FLSA and Rule 23 Class members pre-judgment and post-judgment interest as applicable;

(q)      Awarding Plaintiffs and the FLSA and Rule 23 Class members the expenses incurred in this action, including costs and attorneys' fees;

(r)    Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(s)    All such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated: New York, New York
        October 1, 2018

MICHAEL FAILLACE & ASSOCIATES, P.C.

By:    /s/ Michael Faillace
       Michael Faillace [MF-8436]
       60 East 42nd Street, Suite 4510
       New York, New York 10165
       Telephone: (212) 317-1200
       Facsimile: (212) 317-1620
       *Attorneys for Plaintiffs*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

August 29, 2018

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Abel De Jesus Aguirre

                                        Michael Faillace & Associates, P.C.
Legal Representative / Abogado:

Signature / Firma:

                                        29 de agosto de 2018
Date / Fecha:

*Certified as a minority-owned business in the State of New York*

# MICHAEL FAILLACE & ASSOCIATES, P.C.
### Employment and Litigation Attorneys

One Grand Central Place
60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620
Email: Faillace@employmentcompliance.com

August 9, 2018

BY HAND

To: Clerk of Court,

    I hereby consent to join this lawsuit as a party plaintiff. (Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes).

Name / Nombre:                Adrian Olguin Martinez

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:             August 9, 2018

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510                                                          Telephone: (212) 317-1200
New York, New York 10165                                                          Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

August 27, 2018

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                        Armando Hernandez

Legal Representative / Abogado:        Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                        27 de agosto de 2018

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

August 16, 2018

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                        Carlos Humberto Reyes Herrera

Legal Representative / Abogado:        Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                          16 de agosto de 2018

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

August 16, 2018

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Horwin Ventura

Legal Representative / Abogado:   Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                     16 de Agosto 2018

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

———————

Faillace@employmentcompliance.com

August 13, 2018

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Javier De Jesus Armenta

Legal Representative / Abogado:     Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                     13 de agosto de 2018

# Michael Faillace & Associates, P.C.
## Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510                                          Telephone: (212) 317-1200
New York, New York 10165                                          Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

August 16, 2018

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Jose Antonio Romero Romero

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:                *Jose Antonio Romero*

Date / Fecha:                     16 de Agosto 2018

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.
### Employment and Litigation Attorneys

60 E 42ⁿᵈ Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

August 9, 2018

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Josue Mendez Olguin

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                     09 de agosto de 2018

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

August 14, 2018

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Valente Ascencio

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                    14 de Agosto del 2018

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

August 13, 2018

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                       Yonier Alberto Giraldo Orozco

Legal Representative / Abogado:      Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                        13 de agosto de 2018

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

August 21, 2018

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                   Roman Olguin

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                    21 de agosto de 2018

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510                                    Telephone: (212) 317-1200
New York, New York 10165                                      Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

August 27, 2018

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Abelardo Perez  Torralba

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:                 *Abelardo Perez*

Date / Fecha:                      27 de agosto 2018

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.
### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165
—————

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

August 27, 2018

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:          William Paladines

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:          27 de Agosto del 2018

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

————————

Faillace@employmentcompliance.com

August 27, 2018

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Juan Palacios

                                        Michael Faillace & Associates, P.C.
Legal Representative / Abogado:

Signature / Firma:

Date / Fecha:                           27 de agosto de 2018

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

August 29, 2018

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:               Miguel Angel Galicia Jimenez

Legal Representative / Abogado:     Michael Faillace & Associates, P.C.

Signature / Firma:     _____

Date / Fecha:          29 de agosto de 2018     _____

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

—————

Faillace@employmentcompliance.com

August 29, 2018

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                 <u>Carlos Vidals Ramos</u>

Legal Representative / Abogado:    <u>Michael Faillace & Associates, P.C.</u>

Signature / Firma:             *Carlos Vidals*

Date / Fecha:                  <u>29 de agosto de 2018</u>

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

August 31, 2018

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:              Misael Leon Sanchez

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:              31 de Agosto del 2018

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

September 5, 2018

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:            Armando Rafael Mesinas Perez

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:            5 de septiembre 2018

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42ⁿᵈ Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

———————

Faillace@employmentcompliance.com

September 5, 2018

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Hernan Lopez Carranza

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                      5 de Septiembre del 2018

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

_____

Faillace@employmentcompliance.com

September 5, 2018

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    **Marcos Alcantara Hernandez**

                                   Michael Faillace & Associates, P.C.
Legal Representative / Abogado:

Signature / Firma:

                                   05 de septiembre de 2018
Date / Fecha:

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

September 11, 2018

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                   Jesus Angel Basurto

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                    11 de Octubre 2018

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.
### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

September 12, 2018

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                         Javier Flores Segundo

Legal Representative / Abogado:        Michael Faillace & Associates, P.C.

Signature / Firma:                     Javier Flores.

Date / Fecha:                          12 de septiembre de 2018

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

September 13, 2018

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Jose Gustavo Peralta Avendano

Legal Representative / Abogado:          Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                           13 de septiembre de 2018

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

**Employment and Litigation Attorneys**

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

September 24, 2018

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Osban Yovany Londono Castrillon

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:                 Osban Londono C.

Date / Fecha:                      24 de Septiembre del 2018

*Certified as a minority-owned business in the State of New York*